# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-23-00413-CR

---

**Ronnell Lamont Brown, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 264TH DISTRICT COURT OF BELL COUNTY
### NO. 81003, THE HONORABLE WADE NICHOLAS FAULKNER, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Ronnell Lamont Brown entered an open plea of guilty to aggravated assault with a deadly weapon, and true to a felony enhancement. *See* Tex. Penal Code §§ 12.42, 22.02. The trial court assessed punishment at 47 years in prison and ordered $39,504.79 in restitution. At the same time, Brown entered an open plea of guilty to unlawful possession of a firearm by a felon. *See id*. § 46.04. The trial court assessed punishment at ten years in prison. Brown appeals both convictions. This appeal concerns only the aggravated assault conviction. Brown argues his counsel committed ineffective assistance by failing to object to the restitution order. We affirm.

## BACKGROUND

In the summer of 2019, Brown chased his on-again, off-again girlfriend Amanda Dusek as she was trying to leave him and shot at her. Dusek ran out the door of their apartment, down the stairs, to the parking lot, and then down the street, occasionally ducking. Brown missed

a few times but then hit Dusek's right ankle. She kept running. He hit her right buttock, and she fell. Brown stood over her, pointed the gun at her head, and pulled the trigger. But the gun didn't fire, as it had run out of ammunition. As he was trying to put another magazine in the gun, an off-duty officer intervened. Brown dropped the gun, the off-duty officer detained him and then she provided aid to Dusek. Responding officers found seven shell casings out along the path of the chase.

A Bell County Grand Jury indicted Brown on a count of aggravated assault with a deadly weapon, alleging Brown

> did then and there intentionally, knowingly, and recklessly cause serious bodily injury to Amanda Dawn Dusek by shooting Amanda Dawn Dusek with a firearm, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of said assault, and the said Amanda Dawn Dusek was a member of the defendant's household or a person with whom the defendant has or has had a dating relationship, as described by Section 71.005 or 71.0021 (b) of the Texas Family Code[.]

The indictment also alleged a single enhancement—a 2002 aggravated assault with a deadly weapon conviction. At the plea hearing, Brown pled guilty to the charge and true to the enhancement paragraph. The trial court then took the case under advisement explaining to Brown that it would "have probation prepare what's called a presentence [investigation] report that's got a lot of information about you that I can potentially use in determining an appropriate sentence in your case." "And we're going to come back on another day to conduct your sentencing hearing. You understand that?" Brown replied, "Yes."

At the end of the plea hearing, defense counsel stated for the record that he had "thoroughly discussed" the case and range of punishment with Brown and had "explained to him with the open plea we would have an opportunity to do a [presentence investigation report]

2

and go to the court for punishment and ask the Court for punishment in the range that we know is available[.]"

When the trial court called the case for the sentencing hearing, the parties announced to the court that they had agreed "to pre-admit all exhibits" to include State's Exhibits 1-22 (2 officer body cam videos, 12 photographs, the gun, the 7 shell casings, and Dusek's medical records) and Defense's Exhibit 2 (Brown's forensic mental health evaluation). The trial court admitted those exhibits.

The trial court heard from responding officers and Dusek. Dusek testified about Brown's assault, the resulting injuries, the required surgeries, and the permanent physical effects. She also testified that she does not "feel safe even if he's gone" and that she does not "trust anything or anybody."

Brown's great aunt, who had taken him in because his father was not in the picture and his mother was incarcerated, testified about his rough childhood. A court-appointed forensic psychologist testified that she evaluated Brown and that his adverse childhood experiences had a significant impact on his development. Brown had a history of treatment for ADHD, depression, and schizophrenia. She testified that individuals with his profile have a difficult time relating their emotions in an appropriate manner and may engage in aggression and self-destructive behavior; he needed treatment. During her testimony, she referred to information in the presentence investigation report and at the end of her testimony, the trial court asked the parties whether they had any objections to the presentence investigation report. Neither did.

Last, the trial court heard evidence relating to the enhancement offense. In 2001, Vietta Daniel, a prior girlfriend like Dusek, was trying to leave Brown when he reacted by shooting

her.  The first bullet travelled through her hands into her shoulder; the second went in above her eye and lodged in her lung.  Brown left her for dead; she called for help before she lost consciousness.

In closing arguments, the Defense asked that the trial court consider Brown's childhood trauma and sentence Brown "to a term that's less than life in prison."  The State pointed to the two crimes and Brown's risk of reoffending and stated, "[t]his is a life case."

The trial court found the evidence sufficient to support Brown's pleas and sentenced him to 47 years.  The court ordered restitution "in the amount of $39,504.79" to the compensation to victims of crime fund "at the address noted in the presentence investigation [report]" and gave Brown the maximum amount of time allowed by article 42.037 to pay it.  The presentence investigation report reflects the following:

> **6. Describe Property Damage or Loss:**  Unknown.  All attempts to contact the victim were unsuccessful; however, a claim was located in the Crime Victim's Compensation Portal.  Per their records, the victim has received $39,504.79, to date.
>
> **TOTAL RESTITUTION:**  $39,504.79
> **Payable To:**  Crime Victim's Compensation
> P.O. Box 12198
> Austin, Texas 78711-2198
> Claim #:VC19256583

The judgment contains the following:

> Furthermore, the following special findings or orders apply:
> DEFENDANT ORDERED BY THE COURT TO PAY RESTITUTION AFTER RELEASE FROM INCARCERATION.
> RESTITUTION IN THE AMOUNT OF $39,504.79 TO BE PAID TO CRIME VICTIMS COMPENSATION (VC19256583).

> Brown appeals.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Brown argues counsel's conduct—in failing to object to the lack of a sufficient factual basis for the ordered restitution—fell below an objective standard of reasonableness. And he argues that conduct caused prejudice because the information in the presentence investigation report provided an insufficient basis for restitution. Brown asks that we set aside the restitution order and remand for a restitution hearing to determine the correct amount of restitution to be ordered.

## APPLICABLE LAW AND STANDARD OF REVIEW

To prevail on a claim of ineffective assistance of counsel, an appellant must establish that counsel's performance was deficient, and he suffered prejudice because of that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls "below an objective standard of reasonableness." *Id.* at 688. Prejudice exists if an appellant shows "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). An appellant "bears the burden of proving by a preponderance of the evidence that counsel was ineffective." *Id.* at 813. "Claims of ineffective assistance must be firmly rooted in the record." *Hart v. State*, 667 S.W.3d 774, 782 (Tex. Crim. App. 2023).

On direct appeal, there is a "substantial risk of failure" when raising ineffective assistance of counsel because in most cases, "the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel." *Thompson*, 9 S.W.3d at 813–14. If trial counsel has not had the chance to explain the reasons for his conduct, an appellate court "will

not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

**ANALYSIS**

As the State observes, trial counsel has not had the chance to explain the reasons for his conduct, so we cannot conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. Given the state of the law of presentence investigation reports and restitution, and the state of the record in this case, counsel's failure to object to the order of restitution does not meet that standard.

**Presentence Investigation Reports**

Presentence investigation reports are prepared by supervision officers at the direction of the trial court and contain general punishment-phase evidence to assist the court in determining what sentence to assess. *Stringer v. State*, 309 S.W.3d 42, 45 (Tex. Crim. App. 2010); *see* Tex. Code Crim. Proc. art. 42A.252. A presentence investigation report must be in writing and must include, inter alia, "(1) the circumstances of the offense with which the defendant is charged; (2) the amount of restitution necessary to adequately compensate a victim of the offense; and (3) the criminal and social history of the defendant[.]" Tex. Code Crim. Proc. art. 42A.253(a). The purpose of such a report "is to provide a wide range of information to the trial court without an adversarial hearing." *Stringer*, 309 S.W.3d at 48. "The probation officer who prepares the report is neutral and the report is written in anticipation of consideration by the trial judge for sentencing, not for prosecution." *Id*. The defendant or the defendant's attorney must be allowed "to read the presentence [investigation] report" and "to comment on a presentence investigation

6

[report] . . . and, with the approval of the judge, introduce testimony or other information alleging a factual inaccuracy in the [presentence investigation report]." Tex. Code Crim. Proc. art. 42A.255(a), (b). The prosecutor can also access the report. *Id*. art. 42A.255(c).

**Restitution**

"Restitution is a victim's statutory right," and the statutes authorizing restitution are interpreted "liberally to effectuate fairness to the victims of crime." *Burt v. State*, 445 S.W.3d 752, 756-57 (Tex. Crim. App. 2014). But the Texas Legislature "has also recognized limits on the right to restitution: the amount of restitution must be just; it must have a factual basis in the record; and it may be ordered only to a victim of an offense for which the defendant is charged." *Hanna v. State*, 426 S.W.3d 87, 91 (Tex. Crim. App. 2014).

A trial court may order restitution to the compensation to victims of crime fund to the extent that fund has paid compensation to or on behalf of a victim of an offense that results in personal injury. Tex. Code Crim. Proc. art. 42.037(a), (b)(2)(B); *see id*. art. 56B.451-53. "The court, in determining whether to order restitution and the amount of restitution, shall consider: (1) the amount of the loss sustained by any victim and the amount paid to or on behalf of the victim by the compensation to victims of crime fund as a result of the offense; and (2) other factors the court deems appropriate." *Id*. art. 42.037(c).

"The court may order a community supervision and corrections department to obtain information pertaining to the factors listed in Subsection (c)," "[t]he supervision officer shall include the information in the [presentence investigation] report required under Article 42A.252(a)," and "[t]he court shall permit the defendant and the prosecuting attorney to read the [presentence investigation] report." *Id*. art. 42.037(j). The State has the burden to prove the

7

amount of loss by a preponderance of the evidence. *Id*. art. 42.037(k). Challenges to restitution orders, including factual-basis challenges, must be raised in the trial court to preserve the challenges for appellate review. *See Garcia v. State*, 663 S.W.3d 92, 94, 97 (Tex. Crim. App. 2022).

Articles 42.037(j) and 42A.253 therefore allow a trial court to collect information relevant to restitution and to rely on that information in setting restitution so long as the defendant has had a chance "to read the presentence [investigation] report" and "to comment on a presentence investigation [report] . . . and, with the approval of the judge, introduce testimony or other information alleging a factual inaccuracy in the [presentence investigation report]." Tex. Code Crim. Proc. arts. 42.037(j), 42A.253, 42A.255(a), (b).

**The State of the Record**

Here, the record reflects that all parties were aware the trial court would order a presentence investigation report to assist it in sentencing. *Stringer*, 309 S.W.3d 45; Tex. Code Crim. Proc. art. 42A.252. The presentence investigation report includes the circumstances of Brown's assault on Dusek, the amount of restitution owed to the compensation to victims of crime fund, and Brown's criminal and social history. Tex. Code Crim. Proc. art. 42A.253(a). The parties exhibited familiarity with the presentence investigation report at the sentencing hearing. *Id*. arts. 42.037(j), 42A.255(a), (c). Brown had the right and the opportunity to challenge the accuracy of the report but did not. *Id*. art. 42A.255(b). The trial court considered the amount paid to or on behalf of Dusek by the compensation to victims of crime fund, as listed in the presentence investigation report, and any other factor it deemed appropriate. *Id*. art. 42.037(c). The trial court also had before it Dusek's testimony about her many medical procedures, and Dusek's voluminous

8

medical records supporting that testimony. The trial court therefore had the information contemplated by the applicable statutes before it from which it could rationally infer the correct amount of restitution to order. *Id*. art. 42.037(a), (b)(2)(B), (c); *see Smith v. State*, 227 S.W.3d 753, 759, 763 (Tex. Crim. App. 2007) (noting that, in amending the presentence investigation report statutes, "the Legislature clearly intended to widen, not narrow, the scope of what the sentencing entity may consider in assessing punishment").

**Counsel's Challenged Conduct Did Not Constitute Deficient Performance**

Brown nevertheless argues the statement in the presentence investigation report regarding the existence of a compensation to victims of crime fund claim "should be deemed insufficient" in the absence of a restitution hearing, stipulation to the restitution by the parties, or testimony by Dusek as to specific expenses incurred. In other words, he argues that the State failed to meet its burden to prove the amount of loss by a preponderance of the evidence, Tex. Code Crim. Proc. art. 42.037(k), and counsel's failure to object on that basis was objectively unreasonable because a factual-basis challenge must be raised in the trial court to preserve the challenge for appellate review. *See Garcia*, 663 S.W.3d at 94, 97.

But "the rules of evidence do not control what may be included in a [presentence investigation report] (and, by implication, what a trial court may consider in a [presentence investigation report])." *Smith*, 227 S.W.3d at 762. Nor does the Confrontation Clause. *Stringer*, 309 S.W.3d at 48. Rather, "when a [presentence investigation report] is used in a non-capital case in which the defendant has elected to have the judge determine sentencing, *Crawford* does not apply" and holding otherwise "would require a trial judge to hold a mini-trial for sentencing and would thwart the purpose of the [presentence investigation report] as a tool for the court to

9

use in determining punishment." *Id*. Thus, the trial court could properly consider the presentence investigation report in this case in determining the proper amount of restitution, regardless of the lack of a mini-trial on the issue.

Brown also argues that the trial court had to consider his ability to pay and that the amount ordered was unjust. (This is either a stand-alone trial court abuse of discretion claim or another ineffective assistance for failure to object claim.) Brown's *in*ability to pay was reflected in the presentence investigation report: Brown had been "unemployed" for four years, and before that had been making $9.00 per hour. Brown points to the unlikeliness that, because of his long sentence, he will ever be able to satisfy the judgment, and the possible parole consequence he could suffer were he ever paroled—"specifically, revocation for failure to timely pay." But "[t]he statute authorizing restitution does not explicitly require a trial court to make a determination about the defendant's ability to pay when restitution is ordered[.]" *Garcia*, 663 S.W.3d at 97. Rather, "[c]onsideration of the defendant's financial circumstances and ability to pay is explicitly required only in the event of a possible revocation for failure to pay restitution." *Id*. (citing article 42.037(h)). At that time the trial court or parole panel must consider a host of factors including "(1) the defendant's employment status; (2) the defendant's current and future earning ability; (3) the defendant's current and future financial resources; (4) the willfulness of the defendant's failure to pay; (5) any other special circumstances that may affect the defendant's ability to pay; and (6) the victim's financial resources or ability to pay expenses incurred by the victim as a result of the offense. Tex. Code Crim. Proc. art. 42.037(h).

Counsel's decision not to object to the factual basis of the restitution (or its justness) may have reflected counsel's determination that no valid objection to the trial court's consideration of the presentence investigation report existed under Texas statutes and case law. *See* George E.

10

Dix & John M. Schmolesky 43A Tex. Practice: Criminal Practice and Procedure § 46:136 (3d ed. 2011) (stating that through article 42.037(j), the Texas Legislature "directed that the presentence [investigation] report is admissible hearsay for the purpose of establishing restitution amount").

By all indications, Brown wanted to take responsibility for his actions. Given the relevant statutes and the defense case for a less-than-life sentence that counsel did put on and did achieve, counsel's failure to object to the restitution's factual basis was not so outrageous that no competent attorney would have engaged in it. *Garcia*, 57 S.W.3d at 440. Because Brown failed to satisfy the deficient performance prong of the *Strickland* test, we need not consider the prejudice prong. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

## CONCLUSION

Having overruled Brown's appellate complaint, we affirm the judgment of the trial court.

_____
Chari L. Kelly, Justice

Before Justices Baker, Triana, and Kelly

Affirmed

Filed:   November 5, 2024

Do Not Publish

11